## GUSTAFSON et v V. C. TAYLOR & SON, INC.

Common Pleas Court, Cuyahoga Co.

No. 477856. Decided June 27, 1940.

Arthur P. Gustafson, Carl A. Mintz and Julius A. Negin, Cleveland, for plaintiff.

Garfield, Cross, Daoust, Baldwin & Vrooman and Carl A. Hope, Cleveland, for defendant.

## OPINION

By WALTHER, J.

The plaintiffs are lawyers duly admitted to practice law in the state of Ohio, and the defendant is a corporation engaged in the real estate business. The plaintiffs in their petition for injunction claim that the defendant is practicing law and that such practice of law by the defendant is an unauthorized practice of law. The defendant denies the claims of the plaintiff with respect to its practicing law, and the court is therefore called upon to determine whether the acts of the defendant constitute the practice of law by it.

The following observations are made with reference to the claim that the filling in of the blanks on the "Offer to Purchase" constitutes the practice of law. The offer to purchase is in the following form:

Offer to Purchase

Established 1872
V. C. TAYLOR & SON, INC.
Real Estate

Members
National, Ohio and
Cleveland Real Estate Boards

12417 Cedar Road

Cleveland Heights, Ohio, —, 19—.

The undersigned ————————, the PURCHASER, hereby offers and agrees to buy the following described property, together with all heriditaments and appurtenances thereunto belonging, but subject to all legal highways, zoning ordinances, and to all restrictions and conditions thereon now of record, situated in the ——————of —————, County of Cuyahoga, and State of Ohio, and known as being:
for the sum of ——————$———— upon the following terms and conditions:

$————earnest money, in hand, to apply on the purchase price, the receipt of which is hereby acknowledged by V. C. TAYLOR & SON, Inc., Agents, to be held by them until the transaction is completed;

$————cash upon delivery of deed and Title Guarantee as hereinafter provided;

$————by the assumption by purchaser of a note secured by a ———— mortgage against said premises as follows:

All window shades, window and door screens, storm doors, awnings, incinerator, heat regulator. coal basket for grate, gas logs, and attached heaters, garage heater, electric fixtures, bathroom fixtures, landscaping, curtain rods, linoleum ————, if any NOW ON THE PREMISES are considered as fixtures and shall pass with the title. Interest on mortgages, insurance, and rents shall be prorated as of the date of delivery of deed.

All taxes and assessments shall be prorated according to the calendar year as of the date of delivery of deed using the last available County Treasurer's Tax duplicate, less, however, any special taxes which expire with the payment of the last current tax bill. If there are any re-assessed special assessments upon above premises, they shall be paid by party conveying title.

Possession of the premises to be delivered on ————.

The OWNER shall convey said premises to PURCHASER or his nominee by good and sufficient Warranty Deed with all dower rights released, warranting same free and clear of all incumbrances, except such as are herein above mentioned and taxes and assessments for ———— half of year 19—— and thereafter; also furnish and deliver with said Warranty Deed a Title Guarantee in the amount of the purchase price of the property, guaranteeing the record title, to and including filing of deed, to be in the condition required by the terms hereof.

All papers and necessary considerations pertaining to the conveyance are to be placed in escrow with ———— within ———— days from the date of final acceptance hereof; each party to pay one-half the escrow fee.

This offer shall be open for acceptance ———— and if not accepted, the earnest money above mentioned shall be returned to the PURCHASER without liability upon the part of V. C. TAYLOR & SON, Inc., to either party. When this offer is accepted by the OWNER, it shall constitute a contract for the purchase and sale of said property as herein provided. This contract shall be performed within ———— days from date of final acceptance, and if within said time PURCHASER defaults in the performance of any of the obligations imposed by the terms hereof, OWNER may at his option treat this contract as null and void

and retain earnest money. If OWNER does not perform his obligation under the contract within said time PURCHASER may at his option treat this contract as null and void and receive the return of earnest money; in which case OWNER agrees to pay the commission as though the sale and transfer had been fully consummated.

In case the PURCHASER conveys real estate as part payment in this transaction, he hereby agrees to pay V. C. TAYLOR & SON, Inc., the regular Cleveland Real Estate Board rate of commission on the above valuation of same.

The terms "OWNER" and "PURCHASER" as used herein, and as designated by signatures below, shall include all persons so designated and their heirs, executors, administrators, successors and assigns.

| Purchaser | Address | Date |
|-----------|---------|------|

The undersigned accepts the above offer, agrees to all the conditions stated above, and agrees to pay V. C. TAYLOR & SON, Inc., the Cleveland Real Estate Board rate of commission on the purchase price of his property for their services as brokers in connection herewith.

| Owner | Address | Date |
|-------|---------|------|

The court's attention has been called to the case of In re Unauthorized Practice in Franklin Co., in what is known as the Gore case. (22 Abs 598). The opinion of the trial judge is found in 7 OO 110. In the complaint, the following language, as constituting the practice of law, appears:

"In preparing and drawing deeds, mortgages, notes, contracts powers of attorney, leases, and other legal documents for others."

In the answer by Gore he denies that he has executed or drafted any document for the public generally or except as ancillary to and as a part of his regular business as a licensed real estate broker.

In the Gore case, the court puts emphasis on the fact that Gore selected the document, and on page 111 the court uses the following language:

"selecting the form of the instrument and determining its suitability and adaptability to the requirements of the transaction in which he was acting as broker."

In the case at bar the form was drafted by a regularly admitted attorney at law, and the real estate broker did not select the form. On page 112 in the Gore case the court stated:

"Take for instance a warranty deed form and you will find that the grantor's and the grantee's names are omitted. No consideration is stated, the description of the premises to be conveyed is entirely lacking, the question affecting the encumbrances is left undetermined as is likewise the covenant to warrant and defend. The clause with reference to the release of dower is incomplete, as is appropriate language in the acknowledgment. In order to complete such instrument one must determine who the grantor should be, what the consideration shall be, and whether the same is a good and valuable one, or a sufficient and adequate consideration. What description shall be used in the deed? Who shall determine the adequacy of the description? Shall the

premises be described by metes and bounds; shall it contain a mere lot number description; where shall this description be obtained from? The habendum clause is indeed important; who shall determine whether this clause is correct? Shall there be any reservations in the deed? If so, who shall determine what they should be, and how they should be worded? What exceptions shall be made in the covenant of warranty? Who shall determine whether or not the parties intended that the grantee assume and agree to pay a mortgage or take the property subject to a mortgage and what language should be used to put this into effect? In the case of a forfeiture clause, what language shall be employed?

"Shall there be an agreement to assume the taxes or other liens? Shall the covenants in question be made to run with the land or shall they simply be personal covenants and how shall such covenants be expressed? Who must determine whether a release of dower is necessary? Who is the proper party to sign and acknowledge a deed and if a deed is given by a corporation who shall determine what officers shall sign and whether or not they are authorized to do so? Who shall determine how many witnesses shall sign? To become effective some instruments must be re-recorded. Who determines the necessity of recording and when it shall be done?"

"It seems to us that the filling in of a blank form of deed as above outlined clearly and unmistakably requires the application of legal knowledge pertaining to the subject matter. Hence, for the protection of the public from lack of skill and learning, the drafting of such instruments should be performed by those who have been licensed so to do by reason of their training and qualifications." (Emphasis ours.)

The court does not find itself out of harmony with these statements, but it will be noted that the court uses the language, "It seems to us that filling in of a blank form of deed as above out-

lined" * * *. In the case at bar the blanks complained of do not call for that kind of language which need be construed or the effect of which be determined, and these matters. which are really factual matters are inserted as the scrivener might insert them and are entirely clearical and almost mechanical in their nature.

The court is unable to come to the conclusion that filling in of blanks with language which refers to facts and which is purely clerical in its nature, and which does not require legal construction, nor determination of the legal effect of that language. constitutes the use of that legal skill which is possessed by lawyers as such. The Gore case went to the Court of Appeals and is reported in **58 Oh Ap 79. 11 OO 495.** The Court of Appeals of Franklin County affirmed the trial court.

While this court is not bound by the Court of Appeals of Franklin County, yet this court does have a very high regard for that court.

It is significant that the Court of Appeals heretofore referred to does use the following language:

"However, on final analysis we are of the opinion that the Supreme Court of Ohio has announced principles which under the rule of stare decisis we are bound to follow."

A very careful study of the cases which the Court of Appeals says bound it are the cases of **Land Title Abstract & Trust Co. v Dworken, 129 Oh St 23, 1 OO 313,** which is frequently referred to as the Dworken case, and the case of **Judd v City Trust & Savings Bank, 133 Oh St 81, 10 OO 95.** The Dworken case holds as follows:

"Syl. 1. The practice of law is not limited to the conduct of cases in court. It embraces the prepartion of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and in addition conveyancing, the preparation of legal instru-

ments of all kinds, and in general all advice to clients and all action taken for them in matters connected with the law."

"Syl. 2. Since §8623-3 GC, precludes the formation of a corporation for the purpose of carrying on the practice of any profession, a corporation is not authorized to perform acts which constitute the practice of a profession."

"Syl. 3. The practice of law involves **a personal relation** which can not be fulfilled by a corporation, and the practice of law is confined to those who have met the prescribed requirements and have been regularly admitted to the bar." (Emphasis ours.)

"Syl. 5. Furnishing opinions in proceedings in court as to necessary parties thereto, and preparing and advising in relation to conveyances and other papers pertaining to real estate transactions, for the benefit of others, are acts falling within the practice of law and may not be performed by guarantee companies except wherein they have a direct or primary interest."

It will therefore be noted that the Supreme Court in the Dworken case holds that because of the personal, confidential relation existing between the client and the lawyer, a corporation may not practice law, and in the fifth syllabus the conjunction "and" is used with the language "preparing and advising". It is not claimed in the case before this court that the respondent prepared and advised in relation to conveyances or other papers but that it performed merely the clerical service, namely, writing in the terms which the purchaser offered to the seller.

The case of Judd v Bank, supra, and which is frequently referred to as the Judd case, in the third syllabus holds as follows:

"The practice of law consists essentially of the performance of legal services for others. Banks and trust companies in Ohio are engaged in the unauthorized practice of law when, through their regular salaried officers and employees, who may be attorneys at law admitted to practice in Ohio, they prepare and draft wills, trust agreements or contracts and other instruments requiring the exercise of legal skill, for their customers or patrons." (Emphasis Ours.)

It is significant that the court speaking through Judge Zimmerman in its opinion on page 95 uses the following language:

"In conclusion, this opinion is confined to deciding the precise issues presented by the record in this case, and should be so interpreted by the bench and bar."

In the Judd case the court uses the words "legal skill." The filling in of the blanks in the case before us does not require the exercise of legal skill.

Anderson's Law Dictionary defines **legal** as follows:

"Pertaining to the understanding, the exposition, the administration, and the science and the practice of law."

Bouvier's Law Dictionary defines **legal** as being:

"that which is according to law."

Ballentine's Law Dictionary defines **legal** as being:

"according to the principles of law; according to the method required by statute; by means of judicial proceedings."

Webster's New International Dictionary defines legal:

"of or pertaining to law; arising out of or by virtue of, or included in, law; based upon, or governed by, law—law in general (as, legal knowledge, legal literature.)"

Skill is defined by the same dictionary as:

"The ability to use one's knowledge effectively and readily in execution or performance; technical expertness; proficiency; a particular art or science; an accomplishment, in other words, skilled, having or requiring such training in a particular occupation as would involve a material industrial loss in a transference to other occupations."

Funk & Wagnall's New Standard Dictionary defines legal:

"Pertaining to or according to law; created or permitted by law; in conformity with law; as, a legal education or paper."

Skill is defined in the same dictionary as

"'The familiar knowledge of any science, art, or handicraft; practical efficiency; special qualification; power of discernment or discrimination; understanding; the reasoning faculty; the intellect; method or process of reasoning."

Skilled is also defined by the same dictionary:

"Skilled, possessing or requiring skill; possessing or requiring technical training or ability."

The Oxford Dictionary by Sir James Murray, L.L.D. defines skill as:

"Cleverness, expertness."

Century Dictionary & Encyclopedia defines skill as:

"The discriminative or reasoning faculty; discriminative power; discernment; understanding; reasoning; a particular power, ability, or art; a gift or attainment; an accomplishment; that for which one is specially qualified."

Words & Phrases Judicially Defined says:

"Skill is defined by Webster as the 'the familiar knowledge of any art or science, united with readiness and dexterity in execution or performance or in the application of the art or science to practical purposes.'"

Words & Phrases, 2nd Series, defines skill as:

"The word skill, as a limitation of expert evidence, must be regarded in its broadest significance, not applied necessarily only to mechanical or professional knowledge. It includes every subject susceptible of special and peculiar knowledge derived from experience." Schwantes v State. 106 N. W., 227, 247, 127 Wisc., 160.

Filling in the date, the name of the purchaser, the location of tne property, the sale price, the terms of sale, the date of giving possession, the time to which taxes are to be paid, the placing of the deal in escrow within a certain time, the time of existence of the offer and the signature of the owner, do not require the exercise of legal skill, but these blanks can be filled in by the average person possessing average intelligence and learning.

A very careful study of the Judd case and Dworken case reveals tne fact that our Supreme Court has not passed on the question which is here under consideration, and we must therefore content ourselves with the ascertainment of the fact as to whether or not the filling in of these blanks required that kind of legal skill which is possessed and practiced by lawyers as such.

It must be constantly borne in mind that all that the respondent did was to fill in certain blanks which called for the recitation of statements which were factual in their nature, and was not limited to the use of that understanding or expertness, particular knowledge, practical efficiency, special qualifications, powers of discernment or dis-

crimination, reasoning faculty, intellect, cleverness, particular power, ability, attainment, accomplishment, or any special qualifications in the law.

All that the respondent in this case did was to fill in certain blanks which were adapted to the use of language which anyone who was not possessed of legal skill could and would use.

While it is at times difficult to determine where legal skill, as distinguished from plain skill begins, it is reasonably safe to say ▆▆▆▆▆▆ ▆ that legal skill is that kind of skill which is acquired by reason of the knowledge in and of the law which comes from study, education, and frequently from experience, in the law. It is that kind of skill in the law which a lawyer thus acquires as distinguished from the knowledge possessed by the average person (layman) of average intelligence and knowledge. The making of a contract does not always require legal skill. When a man and woman marry they enter into a contract that does not require any skill. When one goes to the store to buy a shirt, a tie or handkerchief a contract of purchase and sale is made that does not require legal skill. When one goes to a stock broker and places an order for stock which the stock broker must secure, the acceptance of that order makes a contract, and the making of that kind of a contract does not require legal skill. When a retail grocer goes to a produce merchant, to whom watermelons are shipped on consignment, and orders his produce from such merchant, who does not have title to the produce, it is not required that a lawyer should exercise legal skill in the placing of such order, although the acceptance of such order constitutes a contract. Numerous illustrations of a similar nature can be found, the test being, not the making of a contract, but the exercise of legal skill in the making of that contract.

While the form used is entitled, "offer to purchase," we find that it is in fact "an offer to purchase and acceptance to sell," the very thing which the real estate agent is employed to bring about. There is no evidence and it is not claimed that either party to the transaction could not have the services of a lawyer if he so desired, but the fact is that the real estate broker brought about "a meeting of the minds" between the purchaser and seller, and then, clerically, inserted a recitation of those facts which the parties themselves had determined, and that the real estate broker in fact was merely a messenger boy in taking the offer to purchase to the seller and the seller thereafter signing and agreeing to the same.

Great emphasis has been laid upon the fact that one of the judges of this court held in the case of **Gustafson et v Jestrab, 17 OO 83, (31 Abs 123),** and in the case of **Mintz v Hritz-Miskolczy, 16 OO 532, (30 Abs 639),** that the court felt that he was bound under the rule of stare decisis, and that therefore the writer of this opinion was bound by the findings in the cases last referred to.

We find that our Court of Appeals and our Supreme Court have not passed upon the precise question involved in this case, as heretofore stated. Although the courts heretofore referred to have used the words "stare decisis," neither our Court of Appeals nor the Supreme Court of Ohio has passed upon the identical question. The writer of this opinion has a very high regard for the learned judge who wrote the opinions in the cases of Mintz v Hritz-Miskoloczy and Gustafson v Jestrab, but the writer of this opinion feels that, in view of the fact that he can not bring himself into harmony with the judge's opinions in the last two cases herein mentioned, and particularly so for the reason that the question involved in this case, so far as a binding offer and acceptance are concerned, is not governed by the rule of stare decisis, our Court of Appeals and the Supreme Court, if need be, should lay down the rule definitely as to whether the execution of a binding offer and acceptance constitute the practice of law.

So far as the filling in of the blanks on leases is concerned, the court is of the opinion that that may not be done for the reason that the filling in of

language on lease forms calls for the use of language which frequently requires legal interpretation and legal construction. It sometimes becomes important to determine whether a lease is one which calls for a year to year tenancy, a term to term tenancy, or a month to month tenancy, and the determination of these questions becomes especially important where there is a holding over after the original time fixed in the lease. There are also other clauses in most leases which require a construction which only legal skill can accomplish, and therefore the filling in of blanks in a lease, and the use of language in a lease does call for that kind of legal skill which a lawyer, as such, possesses.

A decree may therefore be drawn denying the injunction with respect to the prayer of the petition so far as the "offer to purchase" is concerned, and granting an injunction against the defendant with respect to the drawing of leases by the defendant. There is no evidence supporting the other claims in the petition and the prayer of the petition for injunctive relief as to those other claims is denied. The cost herein will be assessed against the defendant.